LAROSE, RESPONDENT, *v.* O'CONNELL ET AL., APPELLANTS.

(No. 5,217.)

(Submitted May 29, 1923. Decided June 30, 1923.)

[216 Pac. 796.].

*Rescission—Contract of Exchange of Land—Fraud—Evidence*
*—Insufficiency.*

> 1. Where, in an action by an Indian, ignorant but *sui juris,* to re-
> scind a contract of exchange of property between him and defend-
> ant, a white man, on the ground of fraud, there was not any evi-
> dence that defendant had made or had others to make for him any
> representations whatever, fraudulent or otherwise, to induce plaintiff
> to enter into the trade, a judgment in favor of plaintiff was un-
> warranted; the facts that defendant knew that the city lots which
> he exchanged for plaintiff's allotment of agricultural land were of
> doubtful value and that the plaintiff could not renew a mortgage
> thereon but would lose the property on foreclosure, took advantage
> of his ignorance in driving an unconscionable bargain and cheated
> him, being insufficient to stamp the transaction as fraudulent in law.

*Appeal from District Court, Missoula County; Asa L. Dun-*
*can, Judge.*

ACTION by Peter Larose against M. A. O'Connell and
another. From judgment for plaintiff, defendants appeal.
Reversed and remanded, with directions.

*Messrs. Mulroney & Mulroney,* for Appellants, submitted a
brief; *Mr. Robert E. Mulroney* argued the cause orally.

*Messrs. Russell, Madeen & Clarke,* for Respondent, sub-
mitted a brief; *Mr. Charles A. Russell* argued the cause orally.

MR. CHIEF COMMISSIONER FELT prepared the opinion
for the court.

On December 1, 1920, the plaintiff, a Flathead Indian, re-
ceived from the United States government a patent for an

---

1. Ignorance and carelessness as affecting right to equitable relief
from contract, see notes in 5 Ann. Cas. 214; 11 Ann. Cas. 1164; Ann.
Cas. 1913A, 432; 5 L. R. A. (n. s.) 799.

[68 Mont. 160.]·

allotment of eighty acres of land near St. Ignatius, in Missoula county. The defendant M. A. O'Connell was then the owner of certain business property in the town, which property was encumbered by a mortgage in the sum of $2,800, due on September 5 prior thereto. During the late summer and fall of that year the business of St. Ignatius had moved from the locality where the defendant's property was situated to another part of the town. This resulted in the loss of the most desirable tenants and consequent loss in value of the property. As a result of certain negotiations in which the defendant M. A. O'Connell seems to have been most active, an exchange of the latter's property was made for the plaintiff's allotment; the defendant paying $100 "to boot." The deeds were exchanged on the 24th of December, 1920. The defendant Margaret O'Connell is named as the grantee in the plaintiff's deed. The deed from defendant to plaintiff recites that the property conveyed is subject to a mortgage in the sum of $2,800, which encumbrance the grantee assumes and agrees to pay. Two or three days later the plaintiff went to the bank in St. Ignatius and requested a loan on his newly acquired property. He was informed that it was already encumbered by a past-due mortgage for all that could be loaned on the property. He was further informed that he had been cheated in the trade with defendant. On January 19 following, an action to foreclose the mortgage was instituted, and in due time a default decree of foreclosure was entered. On February 16 following, the plaintiff obtained legal advice. A notice of rescission was served on the defendants, and immediately thereafter this action to rescind the contract was instituted.

The complaint alleges: That the plaintiff is an Indian and a ward of the United States; that since childhood he has been hard of hearing; that he is ignorant, unlettered, and has had no business experience; that he has known the defendant M. A. O'Connell for many years as one of the leading business men of St. Ignatius, and that the defendant Margaret O'Connell, his sister, is postmistress at St. Ignatius; "that the de-

[68 Mont. 160.]

fendant M. A. O'Connell, with the intent to deceive plaintiff, and well knowing that plaintiff reposed great confidence and trust in him and would rely and did rely on the representation made by him, willfully, wrongfully, falsely and fraudulently represented and stated to the plaintiff that the said lots and buildings thereon were worth the sum of $3,000; that the owner of said lots and buildings could go to the bank and borrow the sum of $2,800 thereon, and that the bank at St. Ignatius or any other bank would lend said sum at any time on the security of said lots; that the said lots and buildings thereon were unencumbered by mortgage or lien; that the said lots and buildings were equal in value to plaintiff's lands above described; that said defendant would give to plaintiff, by warranty deed, good and marketable title to said lots and buildings, free and clear of all encumbrances, in exchange for plaintiff's deed to said defendant M. A. O'Connell of plaintiff's said lands.'' This was followed by other appropriate allegations necessary to state a cause of action for rescission on the ground of fraud. The answer denies the fraud.

The cause was tried to the court sitting with a jury. Findings favorable to the plaintiff were made by the jury, which were adopted by the court. Judgment of rescission was thereafter duly entered. The appeal is from the judgment.

Among the several specifications of error relied upon by [1] the defendant is the contention that the judgment of the court is not supported by the evidence. The proof establishes that the plaintiff did not understand that the property was encumbered by a mortgage. But it is absolutely barren of any suggestion that either of the defendants, by word or deed, caused any false impression on the part of the plaintiff in that regard. If the defendant said anything to the plaintiff about the condition of his title, or about any of the matters complained of in the complaint, it does not so appear in the record. There is not a shred of testimony that the defendant made any representation, false or otherwise, about the value of the property, the sum that any bank would loan on the same,

or that the same was free from encumbrance. Nor is there any proof that anyone else made such representations to the plaintiff. The testimony shows that the deed with the clause under which he assumed and agreed to pay the mortgage for $2,800 was read to plaintiff.

We are convinced that the defendant knew the property he was conveying to plaintiff was of doubtful value by reason of the business section of St. Ignatius moving from that part of the town; that he knew the plaintiff would be unable to renew the mortgage, and that he would lose it through foreclosure. He took advantage of the plaintiff's cupidity and improvidence in order to drive an unconscionable bargain. He testified at the trial: "One hundred dollars looks pretty big to an Indian, when he hasn't got any money." He knew that he was cheating the plaintiff in the trade. Soon after the transaction was made, he was quoted by one witness as saying, in substance: "I have just got back from Missoula where I skinned an Indian out of his 80." The defendant did not deny making this statement.

The plaintiff in his brief makes some claim of constructive fraud. There was no breach of any duty that the law can recognize in the conduct of the defendant toward the plaintiff. The parties dealt with each other at arm's-length. However unequal they may have been in business judgment, the law recognizes the plaintiff as being *sui juris,* and he must abide by his own contract. However much the plaintiff may have trusted the defendant by reason of his supposed good standing in the community, the law cannot protect him against misplaced confidence in this case. The law cannot enforce the Golden Rule nor insist upon Christian charity being practiced even on Christmas Eve. As individuals we may justly condemn the defendant; but as the mouthpiece of a court of justice we are bound to apply the facts as disclosed by the evidence to the law as it is written. We are constrained to hold that the evidence in this case does not support the judgment.

In many cases Indian allotments contain restrictions against alienation. Unfortunately there was no restriction to protect the plaintiff in this transaction.

We recommend that the judgment be reversed and the cause remanded, with directions to dismiss the action.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment appealed from is reversed and the cause remanded to the district court, with directions to dismiss the action.

*Reversed.*

Rehearing denied July 12, 1923.